BLACKBURN et al. v. NATIONAL TELE-
PHONE SUPPLY CO.

Circuit Court of Appeals, Sixth Circuit.
April 5, 1927.

No. 4634.

Patents ⬒⟿328—Blackburn, 1,144,318, 1,240,-
169, and 1,308,979, for cable hangers, held
not infringed.

The Blackburn patents, Nos. 1,144,318, 1,-
240,169, and 1,308,979, for cable hangers, as
limited by the prior art to the particular con-
struction shown, *held* not infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. West-enhaver, Judge.

Suit in equity by Jasper Blackburn and the Everstick Anchor Company against the National Telephone Supply Company. De-cree for defendant, and complainants appeal. Affirmed.

A. J. Hudson, of Cleveland, Ohio (Kwis, Hudson & Kent, of Cleveland, Ohio, and Ed-ward E. Longan, of St. Louis, Mo., on the brief), for appellants.

Horace B. Fay, of Cleveland, Ohio (Fay, Oberlin & Fay, of Cleveland, Ohio, on the brief), for appellee.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. Appellants filed this suit against the appellee claiming infringement of United States letters patents Nos. 1,144,318, 1,240,169 and 1,308,979, is-sued to Jasper Blackburn, covering improve-ments in cable hangers. The defense was noninfringement and also invalidity as to the second and third patents, if the claims re-lied on by plaintiffs were given the construc-tion for which they contended. As com-mercially made, the hangers of both appel-lants and appellee consist of one piece, with hooks at both ends and downwardly extend-ing arms that join an arc or convolution which is made the seat of a conductor cable in which there are telephone or telegraph wires. They are suspended shortly apart from a strong wire cable, known as a messen-ger cable, whose function, in conjunction with the hanger, is to support the conductor cable. The hooks or grips and arms are so disposed as to permit the slipping of the hanger about a conductor cable that has been hung and its attachment to the messenger cable. This is known as reclipping.

Appellee's hanger is made under the Bren-izer reissue patent, No. 15,581. The hooks have a torsional grip on the messenger wire, and are disposed at substantially right an-gles to the wire, being applied to or placed over the wire from opposite sides. The hook first applied is referred to as the skew hook; the other, as the follower. The skew hook is placed on the messenger wire, consisting of a plurality of twisted strands, and the other hook is brought beneath the messenger and attached to it from the opposite side. The grip of the skew hook is made to fit the smaller diameter of the messenger, which, owing to the spirally twisted strands, is slightly smaller where the strands go under each other than where they cross, with the result that, when so attached, there is an additional safeguard against the slipping of the hanger that the dragging or lateral move-ment of the conductor cable would tend to effect. The hanger is yielding or elastic in its arms, and perhaps, also, in a less degree, in the loop. This element is utilized in mak-ing the attachment to the messenger. Ex-cept, however, for the slightly smaller grip of the skew hook than that of the follower, it is doubtful that appellee's product has added anything to the art.

The contention of appellant is that appel-lee's hanger infringes claim 1 of the first Blackburn patent, which calls for "a cable hanger comprising a support for a cable, a pair of separated elements for suspending the hanger from a messenger, and an elastic element extending from one of the separated elements towards the other and disposed at an angle relative to a line drawn through the separated elements." This claim was considered in Bonita Manufacturing Co. v. Blackburn (C. C. A.) 251 F. 890, and was held valid, but not infringed by a hanger made according to Brenizer, No. 1,155,127. The cable hanger art and Blackburn's con-tribution to it were fully considered in that opinion, and, while Blackburn was thought to have merit in his grip, the court failed to find any principle of a grip "newly dis-covered or broadly developed" that entitled the patent to a "wide range of equivalents." As pointed out in that case, Blackburn cannot claim a monopoly on a lock grip, nor even a monopoly on an underhold grip, in view of the prior art, but must be limited to his "particular construction." That construction is different from appellee's device in points of engagement with the mes-

senger wire. The same results are accomplished by appellee's hanger, perhaps more effectively; but the differences structurally and in points of engagement with the messenger are, we think, sufficient to exclude it from the narrow equivalency to which Blackburn is entitled.

It is claimed, however, that there is novelty in the "elastic element" of claim 1, which gives the skew hook two points of contact on the messenger, so that upon any longitudinal drag of the cable there is at these points opposing tension against the messenger, resulting in a biting into the cable at both points. This implies the lever principle, either biting point being the fulcrum according to the conceived resistance. This element is limited, as we think, by the state of the art, and perhaps also by the specifications, to the requirement that it extend beyond one of the supporting points. It is something in addition to the hooks and connecting wire, and must be beyond the hook and extend toward the other hook. Appellants undertake to find this element in appellee's hanger, which has a certain elasticity that is probably utilized in reinforcing its grip upon the messenger. But there is nothing novel in an elastic element in a single piece of metal or wire out of which the entire hanger is constructed, and Blackburn did not claim novelty in the elasticity of the hanger, but only in an element extending from one of the separated elements towards the other and disposed at an angle relative to a line drawn through the two, that is, in the arm extending from one of the supporting pieces towards the other. As thus limited, the equivalent of this element is not to be found in Blackburn's second or third patent, nor in appellee's device, although there is an elastic element in each of them. Nor is there patentable novelty in the lever and fulcrum feature used by Blackburn in attaching his hanger. No such principle was claimed by him in his first patent, and whether abandoned, if disclosed, is unimportant, since the same principle is found in Hagerman, No. 795,910, and Brown, No. 837,133, and manifestly there is no invention beyond the specific structure itself in the slightly different application of a theretofore used and well-understood principle of the art.

Claims 3 and 8 of the second patent are involved. They cover both the grip and the elastic element or yielding portion, "intermediate the hook and the cable supporting seat." The hook that is first attached to the messenger has a wrist parallel with and partially beneath the messenger, that exerts an upward pressure, which is opposed by a downward pressure exerted by the overlapping hook. This forms the grip, which is accentuated by the forcing of the other hook beneath the messenger and its attachment thereto from the opposite side. It is claimed that the yielding element in the underslung wrist, acting against the surface of the messenger, throws the hanger arm into a tension, causing an elastic gripping by the hooks. Appellee's device does not have the wrist or its equivalent, or the yielding portion "intermediate" the hook and the cable seat, nor, as called for in claim 3, but not in 8, a yielding portion of "greater length than the diameter of the span wire, and arranged to engage said wire on its underneath surface." There is shown in Blackburn, to be sure, the fulcrum principle in the points of contact between the overlapping hook and the wrist with the messenger; but that principle, as pointed out by the court below, was found in Hagerman and Brown.

There may be also cited against this patent on that point Ogden, No. 1,151,315, and the Brenizer patent. Blackburn's device shows such slight mechanical differences in the application of the same fulcrum principles used in the prior art that its validity may well be doubted. The elastic element, as we have seen, is not the equivalent of the first patent; it is but a different mechanical application of principles that others had used in the art. The other features of the patent for which novelty is claimed are also the result of the application of old principles, the only difference between Blackburn's device and older hangers being structural. That he has added something to the art by virtue of his mechanical improvements may be conceded, but his monopoly must be limited to a range of equivalents that does not include the appellee's device.

The third patent is not used commercially by plaintiff. Its distinguishing features are its shape and a tapering hook, which, when attached, engages the top and side of the messenger wire. The hook, if not the entire hanger, is made from a flat piece of metal, although such a piece is not required by the claim in suit. However, neither the tapering throat nor any other essential feature of this patent is found in appellee's product.

The judgment is affirmed.